**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

WILFREDO GONZALEZ,

      Plaintiff,

                            Case No.: 5:18-cv-00340-JSM-PRL

v.

OCWEN LOAN SERVICING, LLC,

      Defendant.

_____/

**PLAINTIFF'S RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANT'S "MOTION TO DISMISS PLAINTIFF'S COMPLAINT"**

      Plaintiff, Wilfredo Gonzalez, by and through undersigned counsel, responds in opposition to Defendant Ocwen Loan Servicing, LLC's Motion to Dismiss Plaintiff's Complaint [Doc. 9], as follows:

      1.      On July 3, 2018, Plaintiff filed a two-count *Complaint* [Doc. 1] alleging violations by Defendant of the Telephone Consumer Protection Act, 47 U.S.C. §227 et seq. ("TCPA") and Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 et seq. ("FCCPA").

      2.      On August 14, 2018, Defendant filed its Motion to Dismiss challenging Plaintiff's TCPA claim based on ACA International v. FCC, 885 F.3d 687 (D.C. Cir. 2018) – a March 16, 2018, opinion.

      3.      Regarding Plaintiff's TCPA claim, Defendant incorrectly asserts that ACA International changed the scope of the TCPA by "finding that the FCC's 2015, 2008, and 2003 guidance regarding the TCPA was no longer valid."  Consequently, Defendant's

1

related contention that the TCPA no longer applies to calls made to collect a debt is flawed and otherwise without merit.  Second, Defendant wrongly asserts that Plaintiff failed to allege facts showing Defendant used an automatic telephone dialing system ("ATDS").

4.      Regarding Plaintiff's FCCPA claim, Defendant sets forth a flawed proposition that the Court should decline exercising supplemental jurisdiction over Plaintiff's state-law claim under the FCCPA *because* Plaintiff's TCPA claim fails, post-<u>ACA International</u>, where Plaintiff has sufficiently stated a TCPA claim despite and irrespective of ACA International.

5.      As further discussed in Plaintiff's incorporated Memorandum of Law:

(a)      Plaintiff has sufficiently stated a claim under the TCPA;

(b)      The FCC's 2003 *Report and Order*, 2008 *Declaratory Ruling*, the FCC's 2012 *Report and Order*, and portions of the FCC's 2015 *Omnibus Declaratory Ruling and Order*, remain undisturbed and binding on this Court;

(c)      In vacating portions of the FCC's 2015 Order, particularly as to the Commission's 2015 "effort to clarify the types of calling equipment that fall within the TCPA's restrictions" (where the 2015 interpretation *competed* with certain rulings in the Commission's 2003 Order), the D.C. Circuit returned conditions to the status quo ante;

(d)      The statutory definition of an ATDS includes predictive dialers, including pursuant to the FCC's undisturbed 2003, 2008, and 2012 Orders (and as reaffirmed in the undisturbed portions of the FCC's 2015 Order);

(e)     The TCPA applies to calls made to collect a debt, including pursuant to the FCC's undisturbed 2003 Order (and as acknowledged by the D.C. Circuit in <u>ACA International</u>) where it is unlawful to make *any call* using an ATDS or an artificial or pre-recorded message to any wireless telephone number;

(f)     Plaintiff has indeed asserted that Defendant called him using an ATDS  (including use of a predictive dialer); and

(g)     Defendant's proposition that the Court should decline exercising supplemental jurisdiction over Plaintiff's FCCPA claim for the reason that Plaintiff's TCPA claim fails post- <u>ACA International</u> is flawed because Plaintiff has sufficiently stated a claim under the TCPA.

6.     For the reasons stated above and discussed in greater detail below, this Court should deny Defendant's Motion to Dismiss.

<u>MEMORANDUM OF LAW SUPPORTING A DENIAL OF
DEFENDANT'S MOTION TO DISMISS</u>

**STANDARD OF REVIEW**

A complaint need only contain "a short and plain statement of the claims showing the pleader is entitled to relief."  That liberal pleading standard is set forth in Fed. R. Civ. P. 8(a) and construed by the Supreme Court in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009).  The basic principle of this "liberal pleading standard," as characterized by the Eleventh Circuit, is to simply "give the defendant fair notice of what the claim is and the grounds upon which it rests." See <u>Harrison v. Benchmark Elecs. Huntsville, Inc.</u>, 593 F.3d 1206 (11th Cir. 2010).

When evaluating a motion to dismiss, this Court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff.  See Resnick v. AvMed, Inc., 693 F.3d 1317 (11th Cir. 2012).  Detailed factual allegations are not required, as the Supreme Court explained in Twombly, nor does the rule "impose a probability requirement at the pleading stage."  Instead, the rule calls for "**only** enough facts to state a claim to relief that is plausible on its face" (emphasis supplied).  Watts v. Fla. Int'l Univ., 495 F.3d 1289 (11th Cir.2007) citing Twombly.  A claim has facial plausibility when the pleaded factual content allows a court to draw a reasonable inference that the defendant is liable for the misconduct alleged.  See Iqbal.  The standard on a motion to dismiss is not whether Plaintiff will ultimately prevail, but whether the allegations are sufficient to allow Plaintiff to conduct discovery in an attempt to prove the allegations.  See Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986).

## ARGUMENT

### A.    Plaintiff has sufficiently stated a claim under the TCPA.

In his two-count Complaint, Plaintiff alleges violations by Defendant of the TCPA and FCCPA. Defendant posits that the Court should decline supplemental jurisdiction over Plaintiff's state-law claim *based on* a failure of Plaintiff's TCPA claim. That proposition is flawed as Plaintiff has stated a claim under the TCPA.  To sufficiently plead a TCPA claim, Plaintiff must allege facts – to be taken as true at this pleading stage, and construed in the light most favorable to Plaintiff – showing Defendant made non-emergency calls to Plaintiff using an ATDS or artificial pre-recorded voice without

Plaintiff's prior express consent. See <u>Resnick v. AvMed, Inc.,</u> 693 F.3d 1317 (11th Cir. 2012). As noted, Fed. R. Civ. P. 8(a) "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the required elements. See also <u>Rivell v. Private Heath Care Sys., Inc.,</u> 520 F.3d 1309-1310 (11th Cir. 2008).

Plaintiff has alleged sufficient facts to state a claim to relief that is plausible on its face, including ample factual allegations to raise a reasonable expectation that discovery will reveal evidence of Defendant's violation of the TCPA. See, e.g. Complaint [Doc. 1], ¶¶ 18, 26, 27, 29, 32, 39, 51, 52, and 53. Furthermore, Plaintiff alleged sufficient facts that Defendant made non-emergency calls to Plaintiff using an ATDS or artificial pre-recorded voice without Plaintiff's prior express consent.

**B.      Defendant incorrectly asserts the D.C. Circuit vacated the FCC's 2003 and 2008 Orders, where, instead, it vacated two aspects of the FCC's 2015 Order**.

After various regulated agencies sought review of the FCC's 2015 *Omnibus Declaratory Ruling and Order* – an order emanating from the Commission's solicited effort to clarify "various aspects of the TCPA's general bar against using automated dialing devices to make uninvited calls" – the D.C. Circuit vacated two challenged aspects of the FCC's 2015 Order. <u>ACA International v. FCC</u>, 885 F.3d 687 (D.C. Cir. 2018). Specifically, "[t]he challenges encompass[ed] four issues addressed by the agency's order: (i) which sorts of automated dialing equipment are subject to the TCPA's restrictions on unconsented calls; (ii) when a caller obtains a party's consent, does a call nonetheless violate the Act if, unbeknownst to the caller, the consenting party's wireless

number has been reassigned to a different person who has not given consent; (iii) how may a consenting party revoke her consent; and (iv) did the Commission too narrowly fashion an exemption from the TCPA's consent requirement for certain healthcare-related calls."  Correspondingly, the March 16, 2018, Opinion vacated (i) and (ii) and upheld (iii) and (iv).  The D.C. Circuit held that (emphasis supplied):

> "Applying [applicable] standards to petitioners' four sets of challenges **to the Commission's 2015 Declaratory Ruling**, we set aside the Commission's explanation of which devices qualify as an ATDS, as well as its understanding of when a caller violates the Act by calling a wireless number previously held by a consenting party but reassigned to a person who has not given consent. We sustain, however, the Commission's ruling that a party can revoke consent through any reasonable means clearly expressing a desire to receive no further calls or texts, and we also uphold the scope of the Commission's exemption for time-sensitive, healthcare-related calls."

Germane to the instant Motion to Dismiss is the vacatur of the Commission's 2015 "effort to clarify the types of calling equipment that fall within the TCPA's restrictions."  In the FCC's 2015 Order, "[t]he Commission reaffirmed prior orders deciding that "predictive dialers"—equipment that can dial automatically from a given list of telephone numbers using algorithms to predict "when a sales agent will be available"—qualify as auto-dialers."  In the FCC's 2003 Order, as the D.C. Circuit recognized (emphasis supplied), "the Commission had **made clear** that, while some predictive dialers cannot be programmed to generate random or sequential phone numbers, they still satisfy the statutory definition of an ATDS." ACA International at 27. "By reaffirming that conclusion in its 2015 ruling, the Commission supported the notion that a device can be considered an auto-dialer even if it has no capacity itself to generate

random or sequential numbers (and instead can only dial from an externally supplied set of numbers." <u>Id.</u> at 27.  However, the D.C. Circuit reasoned, the 2015 Order went further and espoused a *competing* view.  While recognizing that *either* interpretation might be permissible, the Court reasoned that "the Commission cannot, consistent with reasoned decision-making, espouse **both** competing interpretations **in the same order**" (emphasis supplied).  <u>Id.</u> at 27.  Consequently, and because "[t]he order's lack of clarity about which functions qualify a device as an auto-dialer compounds the unreasonableness of the Commission's' expansive understanding of when a device has the "capacity" to perform the necessary functions," the D.C. Circuit vacated the FCC's 2015 conflicting interpretation – leaving undisturbed the 2003 interpretation, as reaffirmed by the 2015 Order (and otherwise leaving undisturbed any order outside the 2015 Order).

In addition to the D.C. Circuit's own acknowledgement that the FCC's 2003 Order remains undisturbed and binding (as with other prior orders, in that the Court <u>only</u> vacated parts of the 2015 Order), Courts within the Eleventh Circuit have already rejected arguments to the contrary.   See <u>Reyes v. BCA Fin. Servs., Inc.</u>, 312 F.Supp.3d 1308 (S.D. Fla. May 14, 2018) (emphasizing that ". . . nowhere in the D.C. Circuit's opinion are the prior FCC orders overruled. Indeed, that would have been impossible given that the time to appeal those orders had long passed"); <u>Swaney v. Regions Bank</u>, No. 2:13-cv-00544-JHE, 2018 WL 2316452, at *1 (N.D. Ala. May 22, 2018) (". . . the D.C. Circuit invalidated certain portions of the 2015 FCC Order, but not the portion of the Order reaffirming the FCC's 2003 determination . . ."); <u>Maddox v. CBE Grp., Inc.</u>, No.: 1:17-cv-1909-SCJ, 2018 WL 2327037 (N.D. Ga. May 22, 2018) ("Given the ACA Int'l

decision, the Court relies on the FCC's 2003 interpretation of § 227(a)(1) to determine if Defendant's system qualifies as an ATDS. That interpretation focuses on whether a system can "dial numbers without human intervention."); France v. DiTech Fin., LLC, No. 8167CV3938T24MAP, 2018 WL 1695405, at *8 (M.D. Fla., Apr. 6, 2018)(" Pursuant to 47 U.S.C. § 227(a)(1), an ATDS is defined as "equipment which has the capacity–(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."" . . . "Plaintiffs respond that the FCC has interpreted the statutory definition of an ATDS to include predictive dialers, which make calls from a list of numbers fed into the device. See Mais v. Gulf Coast Collection Bureau, Inc., 768 F.3d 1110, 1114 (11th Cir. 2014) ("Plaintiffs' allegations are consistent with the use of a predictive dialer, and therefore, the Court rejects Defendant's argument on this issue.").

Recently, in Ramos v. Hopele of Fort Lauderdale, No. 17-62100-CIV-MORE, 2018 U.S. Dist. LEXIS 139947, at *16 (S.D. Fla. Aug. 16, 2018), the court concluded that "the ACA decision is binding on this Court and, further, that the ACA decision invalidated the FCC's 2015 Order that a dialing system could be classified as an autodialer under the TCPA even if it possessed a latent or potential ability to dial numbers without human intervention." Furthermore, "The ACA decision does not affect the definition of an ATDS as set forth in the FCC's 2003, 2008, or 2012 Orders." Id. at *16.

In another recent opinion, Heard v. Nationstar Mortg. LLC, Case No.: 2:16-cv-00694-MHH, 2018 WL 4028116, at *1 (N.D. Ala. Aug. 23, 2018), the court found that

the Defendant's Avaya predictive dialer qualified as an ATDS. The Defendant used an

Avaya Proactive Contact system with iAssist software. Id. at *4.  The Plaintiff contended

that the Defendant used "two types of calls falling within the TCPA's prohibition: 'blast'

calls and predictive calls." Id. The court detailed:

> "Regarding the first category, a representative for
> Nationstar testified that these blasts are calls 'made by the
> system' in which Nationstar sends the customer
> 'prerecorded messages.' (Doc. 48-16, pp. 35-37). As the
> Heards note, these calls are prohibited by the TCPA's plain
> language. See 47 U.S.C. § 227(b)(1)(B). The record
> indicates that Nationstar placed eleven prerecorded blast
> calls to Mr. Heard's cell phone. (Doc. 48-14, pp. 3-5, 7, 9,
> 11, 18). Although the disputed factual issue of when Mr.
> Heard withdrew consent precludes the Court from tallying
> in this opinion the number of calls for which Nationstar is
> liable, there is no genuine dispute that once Mr. Heard
> withdrew his consent, Nationstar's blast calls violated the
> TCPA."

Id. In the end, the court concluded that "Nationstar's system satisfies the TCPA's

definition of an automatic dialer. Id. at *7. "Therefore, when Mr. Heard withdrew his

consent to be contacted on his cell phone, Nationstar's predictive calls violated the TCPA.

Mr. Heard is entitled to summary judgment on his TCPA claims for Nationstar's blast and

predictive calls following the date on which Mr. Heard withdrew his consent." Id.

Only one court within the Eleventh Circuit has made a different finding (although

the Court did not make a final ruling regarding predictive dialers, but rather lifted a stay

and allowed for further discovery.) See Sessions v. Barclays Bank Delaware, Civ. Action

No. 1:17-CV-01600-LMM, 2018 WL 3134439 (N.D. GA June 25, 2018) (finding that

"the FCC's prior orders with regard to interpretations of "capacity" and descriptions of

the statutorily enumerated functions a device must perform to be an ATDS were vacated

in *ACA International*.")  Sessions, however, is contrary to the D.C. Circuit's own explicit acknowledgement of the FCC's 2003 Order and even more specifically of the FCC's 2003 determination that the statutory definition of an ATDS includes predictive dialers. See ACA International, 855 F.3d at 702.

Outside of the Eleventh Circuit, eleven (11) district level courts have addressed the issue of whether a predictive dialer is an ATDS and/or the validity of the 2003 – 2012 FCC Orders:

1.   Marshall v. CBE Grp., Inc., Case No. 2:16-cv-02046-GMN, 2018 WL 1567852 (D. Nev. Mar. 30, 2018):  The District Court examined the D.C. Circuit's decision in *ACA Int'l* and found that the Court set aside the 2015 FCC's Order interpretation of an ATDS. Id., at *4.  As such, the District Court elected not to stray from the statute's language and ultimately concluded that the Defendant's dialing system did not qualify as an ATDS. Id. at *5.  The *Marshall* Court did not squarely address whether the 2003 FCC Order remained binding.  See Marshall, 2018 WL 1567852. at *7.  Instead, it reasoned that, even if it remained binding, the plaintiff would still lose because "the overwhelming weight of authority" that looked at point-and-click system before the ACA International found "that 'point-and-click' dialing systems, paired with a cloud-based pass-through service, do not constitute an ATDS as a matter of law in light of the clicker's human intervention." (citing , inter alia, Strauss, 173 F. Supp. 3d at 1310-11). However, there is a notable distinction between Marshall and the present matter in that it is undisputed the Defendant in Marshall utilized a Manual Clicker Application, "which is a web-based software by which a CBE agent clicks a bull's-eye on a computer screen and a call is placed." Id. at *5.  **See Ex. A.**

2.   Herrick v. GoDaddy.com LLC, No. CV-16-00254-PHX-DJH, 2018 WL 2229131 (D. Ariz. May 14, 2018):  The Defendant moved for summary judgment arguing that it's dialing system was not an ATDS "as that term is defined by the TCPA and subsequent FCC regulations." Id. at *3. The District Court noted that the FCC seemed to confirm an even more expansive definition in its 2015 Order. Id. at *7. Ultimately, the District Court ruled in Defendant's favor.  Once again, this case wholly distinguishable from the present matter. In reaching its decision, the District Court went a step further and examined the Defendant's human intervention at the time the text message was sent to the intended

recipient.  The District Court noted that an agent would have to take numerous steps, including drafting the message, designating the phone numbers to receive the message, and clicking "send".  The case involved text messages and was not alleging a predictive dialer.  **See Ex. B.**

3.    McMillion v. Rash Curtis & Assoc., No.: 1:16-cv-03396-YGR, 2018 U.S. Dist. LEXIS 101700 (N.D. CA, June 18, 2018): The Defendant argued that its dialing systems were not an ATDS because they "could not store or produce phone numbers to be called using a random or sequential number generator" as outlined in the statutory language. Id. at *4.  The District Court found that "*ACA International* invalidated only the 2015 FCC Order" noting that "the court discussed but does not rule on the validity of the 2003 FCC Order or the 2008 FCC Order." Id. at *7.  Accordingly, the District Court upheld its previous ruling that the Defendant's dialing systems were an ATDS because they "possessed 'predictive dialing' capabilities which allowed them to operate without human intervention" Id. at *4.  **See Ex. C.**

4.    Ammons v. Ally Fin., Inc., No.: 3:17-cv-00505, 2018 WL 3134619 (M.D. Tenn. June 27, 2018): In perhaps the most thorough examination of the impact of *ACA Int'l* on the landscape of the TCPA, the District Court determined that "beyond not expressly repudiating the 2003 FCC Ruling, 2008 FCC Ruling, and 2012 Ruling, as discussed above, ACA International supports the conclusion reached in Reyes because the D.C. Circuit explicitly acknowledged the FCC's 2003 determination that 'while some predictive dialers cannot be programmed to generate random or sequential phone numbers, they still satisfy the statutory definition of an ATDS.'" Id. at *12-13.  The District Court went on to note that "applying the appropriate standard here, the primary consideration…is 'whether human intervention is required at the point in time at which [the Plaintiff's] number [was] dialed.'" Id. at *15.  **See Ex. D.**

5.    O'Shea v. Am. Solar Sol., No. 3:14-cv-00894-L-RBB, 2018 U.S. Dist. LEXIS 110402 (S.D. Cal. July 2, 2018): The Defendant moved to file a second motion for summary judgment, which the District Court subsequently denied holding that "the *ACA* decision is unhelpful to Defendant because Plaintiff is not arguing that the ViciDial predictive dialer is an ATDS because it *could be* configured with autodialing functions. Rather, Plaintiff has submitted undisputed evidence that the ViciDial predictive dialer was in fact presently configured as a predictive dialer. The *ACA* decision left intact the holding of both the FCC's 2003 and 2008 Order that an autodialer is an ATDS.  It follows that the ViciDial predictive dialer is an ATDS." Id. at *4. **See Ex. E.**

6.    Pieterson, et al. v. Wells Fargo Bank, *N.A.*, No.: 17-cv-02306-EDL (N.D. CA July 2, 2018):  While ruling on Defendant's motion to stay, the District Court made a specific finding that while "ACA Int'l vacated the 2015 Declaratory Ruling [ ], it did not clearly intend to disturb the FCC's 2003 and 2008 Orders" and "[e]ven if it had vacated the FCC's earlier orders, the D.C. Circuit's ruling does not overrule Ninth Circuit precedent that bears on the question of what constitutes an ATDS." Id. at *5.  In line with the numerous opinions before it, the District Court agreed that predictive dialers remain an ATDS pursuant to the 2003 and 2008 FCC Orders. **See Ex. F.**

7.    Pinkus v. Sirius XM Radio, Inc., No. 16-C-10858 (N.D. IL July 26, 2018):  The District Court in Illinois ruled that the 2003 FCC Order and the 2008 FCC Declaratory Ruling were invalidated by *ACA Int'l.*  The Court does acknowledge that "most district courts considering the question have held that ACA International vacated only the 2015 Declaratory Ruling". Id. at *10.  The Court later in the Opinion, opines that "*ACA International* did not itself articulate a definitive view of which functions characterize an ATDS." Id. at *15.  Thereby leaving the decision of what constitutes an ATDS or not, up to the various forums in which the case is located, the majority continuing to hold that a predictive dialer qualifies as an ATDS for purposes of the TCPA. **See Ex. G.**

8.    Gary v. TrueBlue, Inc., No. 17-cv-10544, 2018 WL 3647046 (E.D. Mich. Aug. 1, 2018):  In denying the Plaintiff's Motion for Summary Judgment, the District Court determined that ACA Int'l vacated the portions of the 2015 FCC Order that address what constitutes an ATDS based largely on the fact that the "2015 order supported two competing interpretations of an autodialer". Id. at *6.  .  As such, the District Court looked to the statutory language to determine whether the Defendant's text messaging system qualified as an ATDS.  In doing so, the District Court examined the Defendant's text messaging system and determined that it did not qualify as an ATDS due to a great deal of "human intervention," finding that "branch employees must manually edit the list of workers to fit a particular job assignment, craft an outgoing text message, and then click certain keys to send a message." Id. at 7.  In reaching this conclusion, the District Court cited to Smith v. Stellar Recovery, Inc., No. 15-cv-11717, 2017 WL 1336075, 2017 U.S. Dist. LEXIS 35658 (E.D. Mich. Feb. 7, 2017), which held "equipment that cannot dial numbers without agents initiating the call is not an autodialer." Id. at *7.  Beyond the fact that the Gary decision involved text messages, the present matter is once again distinguishable in that Respondent's dialing system does not require any human intervention at the time the call is initiated.  It's further worth noting that the Court directly addressed revocation of consent, and clearly

found "A consumer may revoke consent "at any time and through any reasonable means" including orally or in writing." <u>Id.</u> at 25; *see also* 30 FCC Rcd 7961, 7989, 7990, 7996 (F.C.C. July 10, 2015); <u>ACA Int'l</u>, 885 F.3d at 692. **See Ex. H.**

9.   <u>Somogyi v. Freedom Mortg. Corp.</u>, No. 17-6546 (JBS/SJ) 2018 U.S. Dist. LEXIS 12697 (D.N.J. Aug 2, 2018) and <u>Sieleman v. Freedom Mortg. Corp.</u>, Civil Action No. 17-13110 (JBS/JS), 2018 U.S. Dist. LEXIS 129698 (D.N.J. Aug. 2, 2018)., In two different cases but related to the same Defendant, The District Court of New Jersey found In Dominguez, the Third Circuit addressed the scope of the ACA International opinion for the first time. Though the majority of the analysis focused on "the present capacity question," the Court indicated that the 2003 FCC Order was not overruled: "In light of the D.C. Circuit's holding, we interpret the statutory definition of an autodialer as we did prior to the issuance of the 2015 [FCC Order]." Quoting Dominguez, 894 F.2d at 119. See <u>Somogyi v. Freedom Mortg. Corp.</u>, No. 17-6546 (JBS/SJ) 2018 U.S. Dist. LEXIS 12697 (D.N.J. Aug 2, 2018) and <u>Sieleman v. Freedom Mortg. Corp.</u>, Civil Action No. 17-13110 (JBS/JS), 2018 U.S. Dist. LEXIS 129698 (D.N.J. Aug. 2, 2018). **See Ex. I.**

10.   <u>Abante Rooter and Plumbing, Inc. v. Alarm. Com.</u>, Case No. 15-cv-06314, 2018 WL 3707283 (N.D. Cal. Aug. 3, 2018): The Court specifically held that *ACA Int'l* only invalidated the 2015 FCC Order; the 2003 and 2008 FCC Orders are still valid. <u>Id.</u> at *6.  The Court went on to address predictive dialers specifically and stated "the court in ACA International suggests that including a Predictive Dialer in the definition of an ATDS is a permissible interpretation of the statutory language in the TCPA." <u>Id.</u> at *7.  Lastly the Court ruled that "even if the D.C. Circuit had vacated the 2003 and 2008 FCC Orders, ACA International does not control the Ninth Circuit's interpretation of the statutory language of the TCPA." <u>Id.</u> This Court specifically addressed a number of the issues Claimant anticipates will be raised in his hearing.  The summation of the Court's ruling concludes that predictive dialers do qualify as an ATDS for purposes of the TCPA, before ACA Int'l and after. **See Ex. J.**

11.   <u>Keyes v. Ocwen Loan Servicing, LLC</u>, 2018 WL 3914707 (E.D. Mich. Aug. 16, 2018) Indeed, courts applying <u>ACA International</u> have noted that the pre-2015 guidance, to the extent it was reaffirmed in the 2015 Declaratory Ruling, no longer warrants judicial deference. <u>Id.</u> at *16.  The statute never mentions a capacity to dial from a set list.. Therefore, adhering to the plain language of the TCPA and viewing the facts in the light most favorable to the Defendant, the Court finds that WorkAlert does not qualify as an ATDS as a matter of law."). **See Ex. K.**

Contrary to Defendant's assertion, the FCC's 2003 and 2008 Orders remain undisturbed (as does the FCC's 2012 Order and portions of the 2015 Order reaffirming the 2003 Order).  What *is* set aside, however, is the competing view adopted in the 2015 Order.  As has been demonstrated, twelve (12) out of the eighteen (18) district courts that have addressed this specific issue have agreed with Plaintiff's position in the matter at hand.

**C.     In vacating the Commission's 2015 "effort to clarify the types of calling equipment that fall within the TCPA's restrictions," the D.C. Circuit returned conditions to the status quo ante (restoring the status quo before the 2015 interpretation)**.

As Defendant correctly asserts – though an erroneous contention that the D.C. Circuit's vacatur of aspects of the 2015 Order rendered void the Commission's 2003, 2008, and 2012 Orders in favor of a superseded 1992 interpretation – it is settled law that when an agency rule is vacated (or portions thereof), the prior rule is reinstated (or left undisturbed) as if the vacated rule was never in effect.   Doc. 9, page 10 (citing Alabama Envtl., Council v. Adm'r, EPA, 711 F.3d 1277 (11th Cir. 2013) as well as opinions from the Third and Ninth Circuits).  As well, the D.C. Circuit has held that "[w]hen a court vacates an agency's rules, the vacatur restores the status quo before the invalid rule took effect and the agency must initiate another rule making proceeding if it would seek to confront the problem anew."  Environmental Defense v. Leavitt, 329 F. Supp. 2d 55, 64 (D.C. Cir. 2004); see also Action on Smoking & Health v. C.A.B., 713 F.2d 795, 797

(D.C. Cir. 1983) (per curiam) (emphasizing that "[t]o vacate, as the parties should well know, means to annul; to cancel or rescind; to declare, to make, or to render, void; to defeat; to deprive of force; to make of no authority or validity; to set aside," and that vacatur "had the effect of reinstating the rules previously in force").

As discussed, not only were the FCC's 2003, 2008, and 2012 Orders undisturbed, but so too were the portion of the FCC's 2015 Order reaffirming the FCC's 2003 determination that "while some predictive dialers cannot be programmed to generate random or sequential numbers, they still satisfy the statutory definition of an ATDS." ACA International, 855 F.3d at 702 (quoting the 2003 FCC Order).  The Eleventh Circuit has also echoed this importance in rejection of any argument to the contrary.  See, e.g., Swaney v. Regions Bank, No. 2:13-cv-00544-JHE, 2018 WL 2316452, at *1 (N.D. Ala. May 22, 2018) (holding that the D.C. Circuit invalidated certain portions of the 2015 FCC Order, but not the portion reaffirming the FCC's 2003 determination quoted above). The Eleventh Circuit further explained that "the FCC concluded that the defining characteristic of an ATDS is "the capacity to dial numbers without human intervention" and that "[i]n light of *ACA International*, that proposition still stands." Id. at 2.

### D.    The statutory definition of an ATDS includes predictive dialers.

In enacting the TCPA, Congress made it "unlawful . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service," "unless such call is made solely to collect a

debt owed to or guaranteed by the United States." § 227(b)(1)(A)(iii). The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." Id. § 227(a)(1).

In the FCC's 2003 order, "the Commission had made clear that, while some predictive dialers cannot be programmed to generate random or sequential phone numbers, they still satisfy the statutory definition of an ATDS. ACA International at 27 (citing 2003 Order, 18 FCC Rcd. at 14,091 ¶ 131 n.432; id. at 14,093 ¶ 133). In addition to the FCC's undisturbed (and reaffirmed) 2003 Order, the FCC's 2008 Order further "affirm[ed] that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of auto-dialers." In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 23 FCC Rcd. 559, 566 (2008). More still, the FCC's 2012 Order reiterated that the TCPA's definition of an ATDS "covers any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 FCC Rcd. 15391, 15399 (2012). These FCC Orders are binding on this Court. See Reyes v. BCA Fin. Servs., Inc., 312 F.Supp.3d 1308 (S.D. Fla. 2018) (addressing similar issues post-ACA International).

The TCPA vests the FCC with responsibility to promulgate regulations implementing the Act's requirements. § 227(b)(2). "The Eleventh Circuit has

unequivocally held that final FCC orders are binding on district courts and that district courts "may not determine the validity of FCC orders, including by refusing to enforce an FCC interpretation[.]"   Reyes.   "The FCC has consistently held that predictive dialers constitute ATDSs, their basic function being that they can dial persons without human intervention regardless of whether called numbers are generated randomly or sequentially or from a set list."   Id.   Accordingly, the statutory definition of an ATDS includes predictive dialers, including pursuant to the FCC's undisturbed 2003, 2008, and 2012 Orders (and as reaffirmed in the FCC's 2015 Order and acknowledged by the D.C. Circuit in ACA International).   *Even if* the D.C. Circuit were to have invalided the FCC's 2003 and 2008 Orders, such would not abrogate pre-existing Eleventh Circuit precedent. "To determine whether a dialer is a predictive dialing system, and therefore an ATDS, 'the primary consideration ... is whether human intervention is required at the point in time at which the number is dialed.'"   Swaney v. Regions Bank, No. 2:13-cv-00544-JHE, 2018 WL 2316452, at *1 (N.D. Ala. May 22, 2018) (citing, in post-stay analysis of ACA International, pre-existing Eleventh Circuit precedent).   And *even if* the statutory definition of an ATDS did not include predictive dialers, Plaintiff has alleged in the alternative that Defendant violated the TCPA through the use of an artificial or pre-recorded voice.   "From the plain text of the statute, each of these violations is independently actionable; a plaintiff may recover damages for calls made "using any automatic telephone dialing system or an artificial or pre-recorded voice." 47 U.S.C. § 227(b)(1)(A) (emphasis added)."   Ayers v. Verizon Commc'ns, Inc., No. 8:14-cv-626-T-30MAP, 2014 WL 2574543, at *1 (M.D. Fla. June 9, 2014) (holding same in

consideration of the then-pending ruling in <u>ACA International</u>).  Consequently, Plaintiff has amply stated a claim under the TCPA.

E.      **The TCPA applies to calls made to collect a debt**.

The intent of Congress, when it established the TCPA in 1991, was to protect consumers from the nuisance, invasion of privacy, cost, and inconvenience that autodialed and pre-recorded calls generate. Congress found that consumers consider these kinds of calls, "regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy." *See* S.REP. NO. 102-178, 1st Sess., 102nd Cong., (1991) at 2, 4–5. As Defendant correctly asserted, in the FCC's 2003 Order, the Commission departed from prior rulings and "changed its policy and issued rules applying the TCPA's restrictions even to debt-collection calls would be barred by statute." [Doc. 9, page 6]. Accordingly, Defendant's contention that the TCPA does not apply to calls made to collect a debt *for the reason that* the D.C. Circuit vacated the FCC's 2003 Order is flawed because the Court – as shown above – neither vacated nor disturbed any order beyond two of four challenged aspects of the FCC's 2015 Order.

*Even if* the D.C. Circuit were to have invalided the FCC's 2003 Order, such would not abrogate pre-existing Eleventh Circuit precedent.  See, e.g., <u>Ayers v. Verizon Commc'ns, Inc.</u>, No. 8:14-cv-626-T-30MAP, 2014 WL 2574543, at *1 (M.D. Fla. June 9, 2014) (preemptively rejecting any notion that the D.C. Circuit's ruling may somehow render uncertain whether the TCPA applies to calls made to collect a debt); <u>Patterson v. Ally Financial, Inc.</u>, No. 3:16-cv-1592-J-32JBT, 2018 WL 647438, at *3 n.5 (M.D. Fla. Jan. 31, 2018) (stating "this applies to all types of calls, including those for debt

collection").  The Eleventh Circuit aptly explained:

> "The . . .  issue regarding whether the TCPA applies to non-telemarketing calls such as debt collection calls has already been addressed by the Eleventh Circuit in <u>Osorio v. State Farm Bank</u>, F.S.B., 746 F.3d 1242 (11th Cir. 2014).  The Eleventh Circuit's holding in Osorio makes clear that the distinction related to non-telemarketing calls does not apply to calls made to cellular phones. Indeed, the provisions of the TCPA that apply to autodialed calls to cellular phones and the exemptions promulgated by the FCC demonstrate that DCI's argument with respect to whether the TCPA applies to non-telemarketing calls is without merit. Plaintiff's TCPA claim is brought under 47 U.S.C. § 227(b)(1)(A)(iii), which bans the use of "any automated telephone dialing system" to call "any ... cellular telephone service." The only exemptions in the TCPA that apply to cellular phones are for emergency calls and calls made with prior express consent. See id., 47 C.F.R. § 64.1200(a)(1)(iii). "Unlike the exemptions that apply exclusively to residential lines, there is no established business relationship or debt collection exemption that applies to autodialed calls made to cellular phones." <u>Fenescey v. Diversified Consultants, Inc.</u>, 2014 WL 2526571, at *2 (M.D. Pa. June 4. 2014) (denying a nearly identical motion to stay filed by DCI). Thus, DCI's argument with respect to this issue is without merit."

Defendant's argument that the TCPA no longer applies to calls made to collect a debt is not only without merit, as it has been addressed by the Eleventh Circuit, but it is faulty in that the argument is predicated on an inaccurate assertion that the D.C. Circuit vacated the Commission's 2003 Order.  Not only has the Eleventh Circuit preemptively rejected the argument now advanced by Defendant, it is otherwise established law that the only debt collection calls exempt from the TCPA are those "made solely to collect a debt owed to or guaranteed by the United Sates."  47 U.S.C. § 227(b)(1)(A), as amended by the Budget Act § 301(1)(A) by Congress on November 2, 2015.  It is undisputed that the debt for which Defendant placed calls to Plaintiff is neither owed to nor guaranteed by the United States. Since the TCPA's inception in 1991, Congress has only revised the TCPA in 2015 during the BBA mentioned above. By expressly exempting debt collection

calls made solely "to collect a debt owed to or guaranteed by the United Sates," Congress affirmed that the TCPA applied to all other debt collection calls.

In <u>Heard v. Nationstar Mortg. LLC</u>, No.: 2:16-cv-00694-MHH, 2018 WL 4028116, at *1 (N.D. Ala. Aug. 23, 2018), the court made specific mention, "[A]utodialed ... calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the 'prior express consent' of the called party." In re Rules & Reg.Implementing the Tel. Consumer Prot. Act of 1991, 23 F.C.C. Rcd. 559, 559 (2008). Although the TCPA includes an established business relationship exception that exempts certain debt collection calls, the TCPA does not make an exception for auto-dialed collection calls made to a cellular phone. See <u>Clark v. Allied Interstate, LLC</u>, 2017 WL 2903358, at *3 (N.D. Ga. Jan. 20, 2017). Accordingly, Defendant's argument is incorrect.

**F.     Defendant incorrectly asserts that "Plaintiff has not alleged facts showing that Ocwen called him with an ATDS."**

Defendant incorrectly asserts that "Plaintiff has not alleged facts showing that Ocwen called him with an ATDS."  For example, Plaintiff alleged:

> (1)     "Upon information and belief, some or all of the calls the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "auto-dialer calls"). Plaintiff will testify that he knew it was an auto-dialer because of the vast number of calls he received and because he heard a pause when he answered his telephone before a voice came on the line and he

20

received prerecorded messages from Defendant." Doc. 1 ¶ 18.

(2)     "Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as it did to Plaintiff's cellular telephone in this case." Doc. 1, ¶ 29.

(3)     "Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice just as it did to Plaintiff's cellular telephone in this case, with no way for the consumer, Plaintiff, or Defendant, to remove the number." Doc. 1, ¶ 30.

(4)     "Defendant has numerous complaints across the country against it asserting that its automatic telephone dialing system continues to call despite requested to stop." Doc. 1, ¶ 33.

(5)     "Defendant willfully violated the TCPA with respect to Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that he wished for the calls to stop." Doc. 1, ¶ 48.

(6)     "Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii)." Doc. 1, ¶ 49.

As shown, Plaintiff has in fact asserted that Ocwen called him using an ATDS. See, e.g., <u>France v. Ditech Financial, LLC</u>, (M.D. Fla. April 4, 2018) (holding that similar details were sufficient to support the plaintiffs' contention that the defendant used an ATDS). Not only has Plaintiff alleged that Defendant called him using an ATDS, but future discovery will reveal evidence that Defendant made unlawful calls to Plaintiff using an ATDS or artificial pre-recorded voice.

**G.     Defendant's proposition that the Court should decline exercising supplemental jurisdiction over Plaintiff's FCCPA because Plaintiff's TCPA claim fails is flawed because Plaintiff has sufficiently stated a claim under the TCPA**.

Defendant's proposition that the Court should decline exercising supplemental jurisdiction over Plaintiff's FCCPA for the reason that Plaintiff's TCPA claim fails post-ACA International is flawed because Plaintiff has sufficiently stated a claim under the TCPA over which this Court has original jurisdiction (as well, Plaintiff's TCPA and FCCPA claims are so related that they form part of the same case or controversy under Article III of the United States Constitution).   As Defendants argument is predicated entirely upon the purported failure of Plaintiff's TCPA claim, and because that argument is flawed, Plaintiff's response is limited to that proposition.

**H.     Defendant's allegation that Plaintiff "Fails to Plead Any Facts to Show that Ocwen's Conduct was Injurious or Harassing Pursuant to §559.72(7) of the FCCPA" is without merit.**

Defendant incorrectly posits that Plaintiff's Complaint was lacking any facts showing injurious or harassing conduct. Plaintiff's Complaint explains, with detail:

> (1) "From each and every call without express consent placed by Defendant to Plaintiff's cellular telephone, Plaintiff suffered the injury of occupation of his cellular telephone line and cellular telephone by unwelcome calls, making the telephone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendant's calls."  Doc. 1, ¶ 40.

(2) "From each and every call placed without express consent by Defendant to Plaintiff's cellular telephone, Plaintiff suffered the injury of unnecessary expenditure of his time. For calls he answered, the time he spent on the call was unnecessary as he repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the telephone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular telephone, which are designed to inform the user of important missed communications." Doc. 1, ¶ 41.

(3) "Each and every call placed without express consent by Defendant to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the telephone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular telephone, which are designed to inform the user of important missed communications." Doc. 1, ¶ 42.

(4) "Each and every call placed without express consent by Defendant to Plaintiff's cellular telephone resulted in the injury of unnecessary expenditure of Plaintiff's cellular telephone's battery power." Doc. 1, ¶ 43.

(5) "Each and every call placed without express consent by Defendant to Plaintiff's cellular telephone where a voice message was left which occupied space in Plaintiff's telephone or network." Doc. 1, ¶ 44.

(6) "Each and every call placed without express consent by Defendant to Plaintiff's cellular telephone resulted in the injury of a trespass to Plaintiff's chattel, namely his cellular telephone and his cellular telephone services." Doc. 1, ¶ 45.

(7) "As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affect in a personal and individualized way by stress, anxiety, and aggravation." Doc. 1, ¶ 46.

Moreover, Defendant's suggestion that Plaintiff should have alleged that calls were auto-dialed is meritless as the FCCPA, § 559.72, does not require any specific mode of calling

for a Defendant to be liable. In fact, there is no mention in § 559.72 whatsoever that phone calls must be made using an auto dialer.

## CONCLUSION

As shown, Plaintiff has stated a claim under the TCPA. Defendant's argument that the D.C. Circuit invalidated any order beyond portions of the 2015 Order is without merit, and the FCC's 2003, 2008, and 2012 Orders (and portions of the 2015 Order) remain undisturbed and binding on this Court. Accordingly, the TCPA *still* applies to calls made to collect a debt and the statutory definition of an ATDS *still* includes predictive dialers. Accepting Plaintiff's allegations as true, and construing them the light most favorable to Plaintiff, this Court should find that Plaintiff has set forth sufficient factual allegations to allow a court to draw a reasonable inference that Defendant has violated the TCPA. Accordingly, Defendant's Motion to Dismiss must be denied. As well, this Court should reject Defendant's proposition that the Court should decline exercising supplemental jurisdiction over Plaintiff's FCCPA for the reason that Plaintiff's TCPA claim fails post- ACA International in that it is flawed where Plaintiff has sufficiently stated a claim under the TCPA.

Dated: August 27, 2018

Respectfully submitted,

*/s/ John C. Distasio*
John C. Distasio, Esquire
Florida Bar No.: 096328
MORGAN & MORGAN, TAMPA, P.A.
One Tampa City Center
201 North Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile:  (813) 257-0571
Primary Email: JDistasio@ForThePeople.com
Cheyennereed@ForThePeople.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on August 27, 2018 a copy hereof was (is being) filed

with the Clerk of Court via CM/ECF system, which will generate a Notice of Electronic

Filing to all counsel of record, including:  Edrei G. Swanson, Esq., 1111 Brickell Avenue,

Suite 2500, Miami, Florida 33131 (eswanson@huntonak.com).


*/s/ John C. Distasio*
**JOHN C. DISTASIO, ESQ.**
*Certifying Attorney*